FILED
2021 MAR 26 PM 3:11
CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| TRAVIS P.,<br><br>             Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Acting Commissioner of Social Security,<br><br>             Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS**<br><br>Case No. 2:19-cv-00958-DAO<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiff Travis P.[1] filed this action asking the court to reverse and remand the Commissioner of Social Security's ("Commissioner") decision denying his claim for disability insurance benefits and supplemental security income. (*See* Pl.'s Br. in Support of Petition for Review ("Pl.'s Br.") 4, 16, Doc. No. 16.) The Administrative Law Judge ("ALJ") determined Mr. P. did not qualify as disabled. (Certified Tr. of Admin. R. (hereafter "Tr.") 25, Doc. No. 8.) After careful review of the entire record and the parties' briefs,[2] the court[3] AFFIRMS the ALJ's decision.

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including Social Security cases, the court refers to the Plaintiff by his first name and last initial only.

[2] Pursuant to Civil Rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court concludes it does not need oral argument and will determine the appeal on the basis of the written memoranda.

[3] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. No. 13.)

I.     STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of a final decision of the Commissioner of the Social Security Administration.  This court reviews the ALJ's decision to determine whether the record contains substantial evidence in support of the ALJ's factual findings and whether the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  Although the court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

The ALJ's factual findings will stand if supported by substantial evidence.  42 U.S.C. § 405(g).  The substantial evidence standard "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084.  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  "A decision is not based on substantial evidence if it is overwhelmed by other evidence or if there is a mere scintilla of evidence supporting it." *Id.* (internal quotation marks omitted).  Rather than mechanically accepting the ALJ's findings, the court will "examine the record as a whole, including whatever in the record fairly detracts from the weight of the [ALJ's] decision and, on that basis, determine if the substantiality of the evidence test has been met." *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084.

In addition, the court reviews whether the ALJ applied the correct legal standards. The court may reverse where the ALJ fails to do so. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994) ("[T]he failure to apply proper legal standards may, under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis."); *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) ("[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."). Grounds for reversal also arise where the ALJ fails "to provide this court with a sufficient basis to determine that appropriate legal principals have been followed." *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (internal quotation marks omitted).

## II.  APPLICABLE LAW

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the Social Security Act, an individual is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In determining whether a claimant qualifies as disabled within the meaning of the Social Security Act, the ALJ employs a five-step sequential evaluation. The analysis requires the ALJ to consider whether:

1) The claimant presently engages in substantial gainful activity;

3

2) The claimant has a medically severe physical or mental impairment;

3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which precludes substantial gainful activity;

4) The claimant possesses a residual functional capacity to perform his or her past work; and

5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

*See* 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden, in the first four steps, of establishing the disability. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy. *Id.*

### III. FACTUAL AND PROCEDURAL BACKGROUND

Mr. P. alleges disability based on severe impairments of Meniere's disease and right rotator cuff tendonitis. (Tr. 18; Pl.'s Br. 4, Doc. No. 16.) He filed an application for disability insurance benefits and for supplemental security income on November 29, 2016, alleging disability beginning April 1, 2016, which he amended to October 1, 2016 at the hearing. (Tr. 39–40; Pl.'s Br. 4, Doc. No. 16.) The claim was initially denied on May 16, 2017, and then denied again upon reconsideration on August 3, 2017. (Tr. 15.) On August 31, 2017, Mr. P. requested a hearing before an ALJ. (*Id.*) The hearing was held on November 29, 2018. (*Id.*)

On December 14, 2018, the ALJ issued his written decision denying Mr. P's claim. (*Id.* at 15–25.) With respect to step two of the sequential evaluation, the ALJ found Mr. P. had the following severe impairments: "Meniere's disease and right rotator cuff tendonitis." (*Id.* at 18.)

At step three, the ALJ found Mr. P. did not have an impairment or combination of impairments meeting one of the listed impairments. (*Id.* at 20.) At step four, the ALJ determined Mr. P. had a residual functioning capacity ("RFC") to perform "light work" with the following limitations: "lift and carry 20 pounds occasionally and 10 pounds frequently"; stand and walk for two hours in an eight-hour workday; "occasionally reach overhead with the right upper extremity and . . . frequently reach overhead with the left upper extremity"; "frequently reach in all other directions, handle, finger, and feel"; "occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds"; "frequently balance, but occasionally stoop, kneel, crouch, and crawl"; and "must avoid moderate exposure to hazards such as machinery and unprotected heights." (*Id.* at 20.) Given these limitations, the ALJ found Mr. P. could not perform any past relevant work including work as a production assembler, material handler, construction laborer, and a flagger. (*Id.* at 24.) However, in the fifth step in the sequential evaluation, the ALJ found, given Mr. P.'s age, education, work experience, and residual functional capacity, jobs "exist in significant numbers in the national economic that [Mr. P. could] perform." (*Id.*) Accordingly, the ALJ concluded Mr. P. was not disabled. (*Id.* at 25.)

On December 14, 2018, Mr. P. appealed the ALJ's decision to the Appeals Council. (*Id.* at 1.) The Appeals Council denied his request for review on October 7, 2019, (*id.*), making the ALJ's decision final for purposes of judicial review. *See* 20 C.F.R. § 404.981.

IV. ANALYSIS

Mr. P. makes two arguments in his challenge to the ALJ's decision. First, he argues the ALJ's decision is inadequate as a matter of law because he failed to address contrary evidence: objective testing of vestibular dysfunction and ongoing wheelchair use. (Pl.'s Br. 4, Doc. No. 16.) Second, Mr. P. argues the ALJ failed "in its affirmative duty to provide specific and

legitimate reasons for declining to follow the treating physician rule." (*Id.*) Mr. P. contends the ALJ factually erred in his reasoning for rejecting the opinion evidence from the treating physician and applied an incorrect legal standard regarding evaluation of the evidence. (*Id.* at 4, 16.)

    A. Conflicting Evidence

Mr. P. first contends the ALJ's decision is inadequate as a matter of law because the ALJ failed to address evidence conflicting with his determination—objective testing of vestibular dysfunction and ongoing wheelchair use. (*Id.* at 4.) He argues the ALJ "must consider all evidence that related to the issue of disability" and must justify "why specific evidence was rejected," particularly since there is a "heightened requirement for 'express analysis' of evidence that conflicts with an ALJ's conclusions." (*Id.* at 12.)

        *i.*    *VNG Testing*

Mr. P. contends the ALJ improperly rejected, with no analysis, the results of the videonystagmography ("VNG") testing he underwent three times for episodic disequilibrium. (*Id.*) According to Mr. P., the ALJ made only one reference to the VNG test results, and this reference was incorrect. (*Id.*) The ALJ noted the "[t]esting showed [Plaintiff] also had bilateral high frequency sensorineural hearing loss . . . . No other complications were seen." (*Id.*; Tr. at 18.) Mr. P. argues this fails to account for the findings by treating physician, William Nelson, of a "right vestibular malfunction," "reveal[ing] a severe almost total loss of function of his right inner ear balance organ" which will continue to cause "significant imbalance when ambulating, changing position, and even at rest." (Pl.'s Br. 12, Doc. No. 16; Tr. 548.)

The Commissioner responds that the ALJ had no duty to discuss every piece of evidence in the record. (Def.'s Answer Br. ("Def.'s Br.") 13, Doc. No. 21.) The Commissioner argues the

6

ALJ recognized the significance of the test results and Dr. Nelson's findings and accounted for it in the RFC with his focus on the impairing effects of Meniere's disease. (*Id.*) In any event, according to the Commissioner, the ALJ did cite to the VNG testing as well as Dr. Nelson's report about the testing on multiple occasions in his decision. (*Id.* at 12.)

Contrary to Mr. P.'s assertion, the ALJ did consider the VNG testing in his analysis. First the ALJ accounted for Mr. P.'s balance and ear functioning problems by finding they were part of a severe impairment of Meniere's disease. (Tr. 18, 20–22.) And the ALJ accounted for the severity of the related symptoms and how they interacted with the other record evidence. (*Id.* at 21–22.) For instance, the ALJ expressly stated an October 2016 exam "showed episodic disequilibrium." (*Id*. at 21.) And the ALJ took Mr. P.'s inner-ear problems and Meniere's disease symptoms into consideration when including the following restrictions in Mr. P.'s RFC: "He can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. He can frequently balance, but occasionally stoop, kneel, crouch, and crawl. He must avoid moderate exposure to hazards such as machinery and unprotected heights." (*Id*. at 20.)

Mr. P. treats the fact that the ALJ did not mention the "significant right caloric weakness" result of the VNG testing as a fatal flaw. While it is true the ALJ did not mention the caloric weakness specifically, he was not required to discuss every piece of evidence. *Trujillo v. Comm'r, SSA*, 818 F. App'x 835, 840–42 (10th Cir. 2020) (unpublished); *Butler v. Astrue*, 412 F. App'x 144, 146 (10th Cir. 2011) (unpublished). And it is clear the ALJ considered Dr. Nelson's June 2017 report, which discusses these issues in depth. (*See* Tr. 22, 30.) In fact, the ALJ relied on this report to find Mr. P's disequilibrium did not affect his gait or balance. (*Id.* at 22.) Moreover, as the record shows, the caloric testing was part of the VNG test and tied to the Meniere's disease diagnosis. (*See id.* at 41, 108, 348, 354, 552.) By fully accounting for the

effect of Meniere's disease and its associated symptoms on Mr. P., the ALJ adequately considered the underlying caloric weakness and Dr. Nelson's findings. *See Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) ("Where . . . the ALJ indicates he has considered all the evidence our practice is to take the ALJ at his word."). There is no reversable error in the ALJ's consideration of this issue.

    *ii.*    *Wheelchair Use*

Next, Mr. P. asserts the ALJ only addressed his use of a wheelchair after August 14, 2018, in rejecting Mr. P.'s statements regarding the intensity, persistence, and limiting effects of his symptoms. (Pl.'s Br. 13, Doc. No. 16.) Mr. P. argues the ALJ failed to account for his need for a wheelchair after August 14, 2018, in evaluating Mr. P.'s RFC. (*Id.*) The Commissioner, however, contends this issue was discussed on the record with the vocational expert and adopted into the ALJ's decision. (Def.'s Br. 12–13, Doc. No. 21.)

The record shows the ALJ did consider Mr. P.'s wheelchair use in his RFC analysis. When questioning the vocational expert about hypothetical jobs, the ALJ noted that "because of the Meniere's disease, this person is restricted to a wheelchair" and clarified that this restricted Mr. P. to sitting for six of eight hours and standing for two of eight hours. (Tr. 64–65.) The ALJ included this restriction in the RFC, finding Mr. P. "can stand and walk for two hours and sit for six hours." (*Id*. at 20.) Where the ALJ considered Mr. P's wheelchair use and addressed it when setting limitations, Mr. P.'s request to reverse and remand the ALJ's decision with respect to this issue is denied.

  B.  <u>Treating Physician</u>

Mr. P. argues the ALJ failed "in its affirmative duty to provide specific and legitimate reasons for declining to follow the treating physician rule." (Pl.'s Br. 13, Doc. No. 16.) Mr. P. contends the ALJ applied an incorrect legal standard regarding evaluation of opinion evidence

8

from the treating physician, Jarrett Hammer, and made a factual error regarding the existence of acceptable diagnostic testing. (*Id.* at 4, 16.)

The ALJ must give a treating physician's medical opinion "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." [4] 20 C.F.R. § 416.927(c)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). This analysis is sequential, meaning "if the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Watkins*, 350 F.3d at 1300. If the ALJ finds the treating physician's opinion unsupported by medically acceptable clinical and laboratory diagnostic techniques, the inquiry regarding controlling weight ends. *Id.* While an express finding with respect to this first question was once considered mandatory, the Tenth Circuit has since declined to remand where it could determine from the ALJ's decision that it "implicitly declined to give the opinion controlling weight." *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014).

If the ALJ does not give a treating source opinion controlling weight, the ALJ must consider the level of deference to give it, using the factors in 20 C.F.R. § 416.927(c). These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist

---

[4] The Social Security Administration revised its rule regarding the evaluation of treating physician opinions for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01 at *5844–45. Mr. P. filed his SSI application on November 29, 2016, (Tr. 15), so the court applies the rules and regulations in place before the March 27, 2017 rule change. *See* 20 C.F.R. § 416.927.

9

> in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (internal quotation marks omitted). The ALJ's decision need not "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). However, the ALJ must "give good reasons in the notice of determination or opinion for the weight that is given the treating physician's opinion." *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (internal quotation marks omitted); *see also* 20 C.F.R. § 416.927(c)(2). The court may not supply possible reasons for giving less weight to or rejecting the treating physician's opinions but may only evaluate the ALJ's decision on its stated reasons. *Robinson v. Barnhart*, 366 F.3d 1078, 1084–85 (10th Cir. 2004).

Here, Dr. Hammer, one of Mr. P.'s treating physicians, opined Mr. P. was "limited to sitting for two hours and was limited in standing and walking to one hour," "would need to take a half hour break every hour," and "could only occasionally lift 10 pounds." (Tr. 23.) Mr. P. contends the ALJ failed to adequately account for this opinion. (Pl.'s Br. 15, Doc. No. 16.) Specifically, Mr. P. argues the ALJ's failure to consider the caloric weakness shown by the VNG testing undermines his conclusions as to Dr. Hammer. (*Id.*) In other words, Mr. P. implies the results of the VNG testing shows Dr. Hammer's opinion was supported by medically acceptable diagnostic techniques, rendering the ALJ's assessment erroneous.

The ALJ openly explained why he declined to give Dr. Hammer's opinion controlling weight: because it was not supported by acceptable diagnostic techniques, it was inconsistent with other substantial evidence and records, and it was lacking in reasoning and references. (*See* Tr. 23.) This decision was not erroneous. Dr. Hammer's treating records show Mr. P. complained of balance issues, (*id.* at 358), and dizziness, (*id.* at 385), but that the severity of

10

these symptoms varied, (*id.* at 366). These complaints are consistent with the VNG testing, which the ALJ adequately accounted for. The ALJ did not err in finding these references in Dr. Hammer's treating records do not support Dr. Hammer's suggested limitations of, for example, needing to take a half-hour break every hour. And the ALJ correctly noted Dr. Hammer's assessment was entirely lacking in reasoning, references, and explanations; it included, instead, bare check-box conclusions. (*See* Tr. 561–62.)

Mr. P. takes issue with the ALJ's statement that he did not give Dr. Hammer's opinion controlling weight in part because it is "*not entirely consistent* with other substantial evidence in the case record." (Tr. 23 (emphasis added).) Mr. P. understands this to mean the ALJ applied the wrong legal standard, since a treating physician's medical opinion must be given controlling weight if, assuming it has met the first step of the controlling weight analysis, it is "*not inconsistent* with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2) (emphasis added). Mr. P. interprets the ALJ's words literally. The ALJ was not, as Mr. P. posits, refusing to give Dr. Hammer's opinion controlling weight unless it was completely consistent with the rest of the record in every way. Saying something is "not entirely consistent" is equivalent to saying it is inconsistent. The ALJ need not use magic words. It is clear from the ALJ's decision that he concluded Dr. Hammer's opinion was inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. § 416.927(c)(2).

The ALJ applied the correct standard in declining to give Dr. Hammer's opinion controlling weight, and he was justified in assigning it little weight. Accordingly, the court affirms the ALJ's decision on this issue.

12

## V. CONCLUSION

For the forgoing reasons, the court AFFIRMS the Commissioner's decision.

DATED this 26th day of March, 2021.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge